UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIELA RODRIGUEZ; GERARDO RODRIGUEZ; IVANA RODRIGUEZ; and K.R., a minor child,

Plaintiffs,

v.

UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY, a Federal agency; BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, a Federal agency; JONNIE GALAZRA; J.D. JACKSON; VIRGIL DAY; JIM BUTLER; OMAR LONGORIA; EDWIN MARTINEZ; DOES 1–50; RED AND BLUE CORPORATIONS; ENTITIES A–J; DOES I–V; and ROE CORPORATIONS VI–X,

Defendants.

CASE NO. C08-0210-JCC

ORDER

This matter comes before the Court on Defendants' Motion to Dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted (Dkt. No. 86); Plaintiff's Response in opposition (Dkt. No. 92); and Defendants' Reply (Dkt. No. 93). The Court has carefully considered these documents, their supporting declarations and exhibits, and the balance of pertinent materials in the case file. The Court hereby GRANTS the motion and finds and rules as follows.

ORDER – 1

## I. BACKGROUND

Gabriela Rodriguez, proceeding *pro se*,[1] is a former federal employee bringing claims against the United States, her former co-workers and supervisors, and others, for alleged violations of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. (2d Am. Compl. (Dkt. No. 75-7).)

Beginning in 1993, Plaintiff worked for the United States Immigration and Naturalization Service ("INS")[2] in Nogales, Arizona, as an Immigration Inspector. (*Id*. ¶ 7.) In about March 2000, she was promoted to the position of Adjudication Officer in Phoenix, Arizona. (*Id*. ¶ 9.) About a year and a half later, Plaintiff applied for a job as an Immigration Inspector at the Vancouver Airport in Vancouver, British Columbia, Canada. (*Id*. ¶ 10.) The job posting specified that the Federal Government would provide housing in Vancouver and the assistance of a relocation coordinator. (*Id*. ¶ 10.) Plaintiff was offered, and accepted, the position and in October or November 2002, Plaintiff and her family—including her husband and two minor children—moved to Vancouver. (*Id*. ¶ 12.) Upon her arrival in Vancouver, however, Plaintiff encountered a number of challenges. First, she found that the

---

[1]Plaintiff was previously represented in this litigation by Brian Finander, an attorney licensed in the State of Arizona. After the case was transferred to this district from the District of Arizona, the Court instructed Mr. Finander that he must comply with the Local Rules in getting permission to practice *pro hac vice*. (Minute Entry May 20, 2008 (Dkt. No. 82).) However, Plaintiff notified the Court on July 14, 2008, that she would be representing herself in this matter, with the occasional consultation of Mr. Finander. (Dkt. No. 84.) Plaintiff is not a lawyer and cannot represent the other Plaintiffs in this action. It appears, however, that Plaintiff's husband's and children's claims rise and fall with Plaintiff's claims and must be dismissed for the same reasons that Plaintiff's claims must be dismissed, as discussed herein. In addition, those Plaintiffs failed to oppose the motion to dismiss, and therefore, "such failure may be considered by the court as an admission that the motion has merit." Local Rules W.D. Wash. CR 7(b)(2). Accordingly, this Order disposes of all claims asserted in this case.

[2]On March 1, 2003, the Department of Homeland Security ("DHS") was established and the INS ceased to exist. (Mot. 3 n.2 (Dkt. No. 86).) The main functions of the INS were thereafter performed by three separate agencies under the umbrella of DHS: Immigration and Customs Enforcement, Customs and Border Control, and Citizenship and Immigration Services. (*Id*.)

ORDER – 2

Government had not made arrangements for her housing and had no choice but to rent a hotel room. (*Id*. ¶¶ 15–16.) The families' personal belongings were held in storage, for which Plaintiff was financially responsible. (*Id*. ¶ 17.) Because the family did not have a permanent address, Plaintiff alleges that she was unable to enroll her children in school. (*Id*. ¶ 18.)

Second, Plaintiff faced difficulties at her new job. She found that no training was available to her. (*Id*. ¶¶ 19–21.) She alleges that her shift supervisor, Johnnie Galarza, mistreated her by, for example, rushing her bathroom breaks and making inappropriate comments expressing doubts regarding Plaintiff's truthfulness about not feeling well. (*Id*. ¶¶ 22–23.) Additionally, a co-worker, Virgil Day, allegedly made repeated inappropriate comments of a sexual nature to Plaintiff. (*Id*. ¶ 24.)

Plaintiff asserts that the resulting stress from these challenges caused her to develop physical and psychological symptoms. (*Id*. ¶ 26.) She saw a therapist and sought other medical assistance. (*Id*. ¶¶ 32–35.) Despite receiving medical advice that she not work overtime hours, Plaintiff asserts that she was pressured to work overtime and was made to feel fearful for her job if she refused to do so. (*Id*. ¶ 36.) On about December 7, 2002, Plaintiff submitted a Compassionate Transfer Request to the Western Region Office, requesting to be transferred back to Phoenix. (*Id*. ¶ 37.) Before she had received any response, on December 23, 2002, she submitted a Leave Without Pay Request accompanied by her medical paperwork. (*Id*. ¶ 38.) Before receiving a response to that request, Plaintiff and her family returned to Phoenix during the first week of January 2003. (*Id*.)

Once she was back in Phoenix, Plaintiff made numerous unfruitful attempts to follow up on her transfer and leave requests. (*Id*. ¶ 40.) Plaintiff contacted both the Vancouver and Seattle offices for assistance, and eventually filed complaints to Edwin Martinez, the officer in charge of the agency in Seattle, Washington. (*Id*. ¶¶ 41–42.) Plaintiff alleges that Mr. Martinez posted inappropriate statements regarding Plaintiff on an Internet website. (*Id*. ¶ 43.) Plaintiff was informed that her status was AWOL. (*Id*. ¶ 44.) She attempted to resolve this matter through Liz Tisdale, in the Georgia headquarters office of U.S. Customs and Border Protection, who allegedly told her that her compassionate transfer was

ORDER – 3

forthcoming. (*Id.* ¶ 46.) Plaintiff sent medical records to Ms. Tisdale, who set up a medical examination for her. (*Id.* ¶ 46.)

After the medical exam, Ms. Tisdale informed Plaintiff that she was no longer qualified to work for the INS because her medical condition adversely impacted her ability to perform the essential duties of an immigration inspector. (*Id.* ¶ 47; Proposal letter (Dkt. No. 86-2 at 1).) On June 4, 2004, Plaintiff received a letter from Ms. Tisdale informing her that she was proposing to remove Plaintiff from her position as an Immigration Inspector and from the Federal service. (Proposal letter (Dkt. No. 86-2 at 1).) The letter stated that the action was based on Plaintiff's having not reported to work since December 2002 "due to extreme emotional distress, depression, anxiety, insomnia and migraine headaches stemming from work." (*Id.*) Plaintiff, through her attorney in Arizona, objected to the proposed removal on grounds that the agency failed to accommodate her medical condition. (Resp. 4 (Dkt. No. 86).) However, the agency found that Plaintiff was not considered an "employee with a disability" and was not entitled to a reasonable accommodation in accordance with the Americans With Disabilities Act ("ADA"). In light of that finding, the agency officially terminated her position as of August 6, 2005. (Termination letter (Dkt. No. 86-2 at 5).) The termination letter notified Plaintiff that she could contest that decision through any one of three avenues, including appealing to the Merit Systems Protection Board ("MSPB") within thirty calendar days of August 6, 2005, or raising any allegation that the action was taken because of discrimination by consulting an EEO Counselor within forty-five days from the receipt of the decision. (*Id.*)

Plaintiff timely appealed the decision to the MSPB, alleging disability and race/national origin-based discrimination. (MSPB appeal (Dkt. No. 86-2 at 6–32).) On the form asking her to identify any bases for claims that the agency's decision to terminate her employment was related to discrimination, Plaintiff checked the boxes for race, national origin, and disability, and left the "sex" box unchecked. (*Id.* at 10 (Dkt. No. 86-2 at 15).) Plaintiff explained that she believed that her Hispanic/Mexican race and national origin "played a big part in the agency's decision" not to accommodate her alleged

ORDER – 4

disability. (*Id.* at 11 (Dkt. No. 86-2 at 16).) She also alleged that she was removed in retaliation for whistleblowing. *(Id.* at 7 (Dkt. No. 86-2 at 12).)

Administrative Judge Barbara Mintz heard Plaintiff's MSPB appeal. On August 17, 2006, Judge Mintz issued a thorough initial decision ruling that the agency proved its charge that Plaintiff was medically unable to perform the duties of her position due to extreme emotional distress, and that Plaintiff had not proven her affirmative defenses of disability discrimination, race/national origin discrimination, or reprisal for whistleblowing. (Initial Decision (Dkt. No. 86-2 at 35).) Plaintiff was notified that the initial decision would become final on September 21, 2006, unless a petition for review was filed by that date. (*Id.* at 14 (Dkt. No. 86-2 at 46).) In addition, Plaintiff was advised that she could request Board review of the decision by filing objections; she could obtain further administrative review of the decision on discrimination by filing a petition with the EEOC no later than thirty days after September 21, 2006; or, instead of filing a petition with the EEOC, she could ask for judicial review of both the discrimination and nondiscrimination issues by filing a civil complaint in Federal district court. (*Id.* at 16 (Dkt. No. 86-2 at 48).)

Plaintiff initiated the instant suit in the United States District Court for the District of Arizona on October 27, 2004, two years *before* the Administrative Judge's decision became final. Plaintiff's First Amended Complaint, filed on August 16, 2005, asserted claims for violations of the Civil Rights Act, the FTCA, the ADA, and the Whistleblowing Act, as well as a number of state law claims. (1st Am. Compl. (Dkt. No. 73-18).) On July 9, 2007, the Honorable Roger G. Strand dismissed most of the claims therein with prejudice, but ordered that Plaintiffs were permitted to file an amended complaint as to the disability discrimination claim and the FTCA claim (except as related to Mr. Rodriguez). (Order (Dkt. No. 75-6).) On July 30, 2007, Plaintiffs filed their Second Amended Complaint, which contained claims for violations of the Rehabilitation Act of 1973, the FTCA, and also a claim under Title VII for "sexual discrimination and hostile working environment." (Dkt. No. 75-7.) In December 2007, the District of Arizona transferred the case to the Western District of Washington on grounds that venue was more

ORDER – 5

proper here on Plaintiffs' Title VII and Rehabilitation Act claims. (Order (Dkt. No. 76-17).)

The instant motion is the first motion filed in this case since the transfer. In it, Defendants seek to dismiss Plaintiff's Rehabilitation Act and Title VII claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. (Mot. 2 (Dkt. No. 86).) In addition, Defendants argue that Plaintiff's FTCA tort claims must be dismissed under Rule 12(b)(1) because there is no subject matter jurisdiction for tort claims involving acts or omissions occurring in a foreign country. (*Id*.) Alternatively, they seek dismissal of the FTCA claims on grounds that the Civil Service Reform Act ("CSRA") preempts the FTCA in the circumstances presented here. (*Id*.) Defendants also contend that the individually named Defendants must be dismissed as improper. (*Id*. at 8–9.)

Plaintiff argues that her Title VII and Rehabilitation Act claims are proper because she timely filed the Second Amended Complaint with Judge Strand's permission. (Resp. 2 (Dkt. No. 92).) She also argues that Defendants' motion to dismiss her FTCA claim is barred by the equitable doctrine of laches. (*Id*.)

## II. APPLICABLE LAW

### 1. Standard for Dismissal Under Rule 12(b)(6)

The Federal Rules of Civil Procedure permit the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 89 (2007). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis omitted); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) (explaining that the Ninth Circuit holds "dismissal inappropriate unless the plaintiffs' complaint fails to 'state a claim to relief that is plausible on its face.'") (*citing Twombly*, 550 U.S. at 571).

ORDER – 6

1     **2.     Standard for Dismissal Under Rule 12(b)(1)**

Pursuant to the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), [the Court] assume[s] the truth of all allegations in the complaint." *Castaneda v. United States*, 546 F.3d 682, 684 n.1 (9th Cir. 2008). In addition, "[t]he party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *Id.* at 984–85.

## III.    DISCUSSION

The Court will address Defendants' arguments with respect to each of Plaintiff's claims in turn, below.

### A.    Title VII Claims

Plaintiff brings claims under Title VII for "sexual discrimination and hostile working environment" based on conduct by Defendants Galarza, Day, and Jackson. (2d Am. Compl. ¶¶ 60–61 (Dkt. No. 75-7 at 11–12).) Specifically, Plaintiff alleges that Galarza and Day made inappropriate comments to her[3] that were so severe or pervasive as to alter the conditions of her employment, and that Jackson failed to protect her from further harassment even after she reported the problem to him. (*Id.*) Defendants argue that these claims must be dismissed for failure to exhaust administrative remedies. (Mot. 12 (Dkt. No. 86).)

---

[3]Plaintiff's Complaint contains allegations that Day made comments of a sexual nature to her. (2d Am. Compl. ¶ 24 (Dkt. No. 75-7 at 6).) However, the Complaint is devoid of any allegation that Galarza made sexually inappropriate comments. It appears that Plaintiff considers Galarza's alleged comments, such as stating that Plaintiff "must be lying about not feeling well" contributed to a hostile working environment. (*Id.* ¶ 22–23.)

ORDER – 7

As a preliminary matter, Title VII provides that the only proper defendant in a federal employee's civil action for sexual discrimination is the head of the department, agency, or unit. 42 U.S.C. § 2000e-16(c). In this case, the only proper defendant as to Plaintiff's Title VII claims is Janet Napolitano, the Secretary of the DHS.[4] As such, the Court must dismiss all the other Defendants with respect to Plaintiff's Title VII claims.

Although federal employees were expressly excluded from coverage under Title VII as it was originally enacted, the statute was amended in 1972 by the Equal Opportunity Employment Act, 42 U.S.C. § 2000e-16, pursuant to which "federal employees were brought within the ambit of the Act." *Ellis v. Naval Air Rework Facility*, 404 F. Supp. 377, 381 (N.D. Cal. 1975). Title VII now expressly prohibits discrimination based on race, color, religion, sex, or national origin aimed at federal employees. 42 U.S.C. § 2000e-16(a). In order to seek relief, a federal employee alleging both an adverse employment action and discrimination has a number of procedural paths to consider. The Ninth Circuit has explained that:

> Ordinarily, a federal employee asserting a discrimination claim pursuant to Title VII of the Civil Rights Act of 1964 must exhaust his or her administrative remedies before filing in Federal District Court. He or she must initially file a complaint with the Equal Employment Office [("EEO")] of his or her agency. Once the agency issues a final decision, the complainant may file an appeal of the agency resolution with the Equal Employment Opportunity Commission [("EEOC")], or alternatively, file a civil suit in federal district court. However, when a federal employee claims he or she has been affected by both an "adverse employment action" and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB. This type of case constitutes the paradigmatic "mixed case complaint," that is, a complaint which alleges the employee suffered an adverse employment action that was affected, in whole or in part, by unlawful discrimination. . . . An employee seeking to file a "mixed case complaint" may follow one of many possible administrative routes. First, he or she may initially file a complaint with the agency EEO, planning to appeal any unfavorable decision to the MSPB. Alternatively, he or she may bypass the EEO, and appeal the agency's action directly to the MSPB . . . Once the MSPB issues a decision in the case, the employee may file a petition for review to the three member Board of the MSPB. If the petition for review is denied, the employee may either appeal

---

[4]Plaintiff's Second Amended Complaint does name Michael Chertoff, the then-current Secretary. (Dkt. No. 75-7 at 2).) Pursuant to Federal Rule of Civil Procedure 25(d), Janet Napolitano is automatically substituted as a party.

ORDER – 8

the discrimination claim to the EEOC, or alternatively, appeal the entire case (including
all claims) to the appropriate United States District Court.

*Sloan v. West*, 140 F.3d 1255, 1259–60 (9th Cir. 1998) (internal citations omitted).

It is undisputed that Plaintiff has never filed a formal EEO complaint regarding her sex discrimination/hostile workplace claim. Plaintiff, believing that she had a "mixed case complaint," chose instead to bypass the EEO and appeal the agency's decision to terminate her employment directly to the MSPB. However, although Plaintiff raised the issues of national origin/race discrimination and disability discrimination before the MSPB, she did not raise her sex discrimination/hostile workplace claim before the MSPB. (*See* MSPB Appeal 10–11 (Dkt. No. 86-2 at 15–16); Initial Decision (Dkt. No. 86-2 at 34 (identifying the claims raised in Plaintiff's appeal as disability discrimination, race/national origin discrimination, and retaliation for whistleblowing).) Therefore, she did not exhaust her sex discrimination/hostile workplace claim through any of the available administrative procedures before filing her claim in district court. Accordingly, the Court must dismiss Plaintiff's Title VII claims for failure to exhaust administrative remedies.[5]

**B.      Rehabilitation Act Claims**

Plaintiff also asserts that the Government violated the Rehabilitation Act by discriminating against her because of her disability and failing to make reasonable accommodations. (2d Am. Compl. ¶¶ 55–56 (Dkt. No. 75-7 at 11).) Defendants contend that these claims, too, must be dismissed for failure

---

[5]In reaching its decision today, the Court has considered some materials attached to the motion in addition to the Second Amended Complaint. The Federal Rules provide that when matters outside the pleadings are presented and are not excluded by the court, the motion is treated as a summary judgment motion and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. FED. R. CIV. P. 12(d). However, the Ninth Circuit does "not require strict adherence to formal notice requirements" with respect to this rule. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Rather, the court should "determine whether the party against whom summary judgment was entered was fairly apprised that the court would look beyond the pleadings and thereby transform the 12(b) motion to dismiss into one for summary judgment." *Id*. (internal quotation and citation omitted). In this case, the extraneous materials were attached to the motion, and Plaintiff herself attached extraneous material in her opposition to the motion. Accordingly, the Court is persuaded that Plaintiff had sufficient notice of the court's decision to consider these materials.

ORDER – 9

to timely exhaust her administrative remedies. (Mot. 2 (Dkt. No. 86).)

"[A] federal employee who alleges employment discrimination on the basis of a handicap [under the Rehabilitation Act] must exhaust the administrative remedies available under Title VII[.]" *Vinieratos v. United States, Dep't of Air Force ex rel. Aldridge*, 939 F.2d 762, 773 (9th Cir. 1991). Defendants concede that Plaintiff timely initiated an appeal of her disability claim with the MSPB. (Mot. 13 (Dkt. No. 86).) The MSPB reached the merits of Plaintiff's disability claim, finding, *inter alia*, that Plaintiff had failed to prove disability discrimination. (Initial Decision 3 (Dkt. No. 86-2 at 35).)

"Although appeals of Merit Systems Protection Board decisions generally must be filed in the Federal Circuit Court of Appeals, district courts have jurisdiction to review 'mixed' cases, in which an action involves both a Merit Systems Protection Board appeal and a discrimination claim." *Coons v. Sec'y of United States Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (*citing* 5 U.S.C. § 7703(b)(2); *Sloan*, 140 F.3d at 1261). However, mixed cases must be "filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action[.]" 5 U.S.C. § 7703(b)(2).

In this case, Plaintiff received notice that the judicially reviewable action by the MSPB regarding her disability claim would become final on September 21, 2006. (Dkt. No. 86-2 at 46.) Therefore, to be timely, her district court claim seeking review of the MSPB decision must have been filed within thirty days of September 21, 2006. Plaintiff did not file an appeal of the MSPB decision. Although Plaintiff did amend her complaint, which was already pending in the District of Arizona, to add a Rehabilitation Act claim on July 30, 2007, this was long past the thirty-day deadline to timely appeal the MSPB decision. (2d Am. Compl. (Dkt. No. 75-7 at 11).) The Court therefore must dismiss Plaintiff's Rehabilitation Act claim.

Plaintiff argues that the Court "possesses subject matter jurisdiction over Plaintiff's Title VII and Rehabilitation Act claims, as Plaintiff timely filed a Second Amended Complaint with permission of the Honorable Roger Strand, United States District Court Judge at the time this case was pending in the

ORDER – 10

District of Arizona." (Resp. 2 (Dkt. No. 92).) However, the Court has carefully reviewed Judge Strand's Order and sees nothing that would change this Court's analysis. Judge Strand dismissed Plaintiff's earlier-asserted claim under the ADA[6] because "the ADA is not an appropriate basis for a cause of action for discrimination against the federal government[.]" (Order 9 (Dkt. No. 75-6).) He granted Plaintiff's request for leave to file an amended complaint "citing such other federal statute as may be deemed appropriate." (*Id*.) Nothing in the language of that Order suggests that Judge Strand ruled that Plaintiff could timely file an appeal of the MSPB decision by filing a Rehabilitation Act claim nearly a year after the MSPB decision on her disability claim became final.

### C.  FTCA Claims

Lastly, Plaintiff brings claims for intentional infliction of emotional distress under the FTCA based on conduct allegedly committed by Day, Galarza, and Jackson while working within the scope of their federal employment. (2d Am. Compl. ¶ 64 (Dkt. No. 75-7 at 12).) In particular, Plaintiff asserts that Day and Galarza made extreme and outrageous comments to her while she was working at the Vancouver Airport and that Jackson failed to take steps to prevent that harassment. (*Id*. ¶¶ 65–69.) She seeks to recover money damages pursuant to the FTCA for these alleged wrongs. (*Id*. at 13 (Dkt. No. 75-7).) Defendants contend that subject matter jurisdiction is lacking.

"The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (internal quotation and citations omitted). The FTCA provides the exclusive remedy against the United States for injuries resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. 28 U.S.C. § 2679(b)(1).

---

[6] Plaintiff asserted an ADA claim in her First Amended Complaint, filed on August 15, 2005, a year before the MSPB ruled on Plaintiff's disability claim. (Dkt. No. 73-18.) Therefore, the ADA claim could not have been considered a timely filed appeal of the MSPB disability decision.

ORDER – 11

Additionally, "[t]he United States is the only proper defendant in an FTCA action." *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995) (*citing Woods v. United States*, 720 F.2d 1451, 1452 n.1 (9th Cir. 1983)); *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998). As such, Plaintiff's FTCA claims against all of the Defendants except the United States must be dismissed on this ground alone.

Further, the FTCA provides only a limited waiver of the Government's sovereign immunity, subject to specific express exceptions. *See* 28 U.S.C. §§ 1346(b), 2680. One of those exceptions is for "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). The Supreme Court has explained that "the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Sosa*, 542 U.S. at 712 (holding that the foreign country exception barred a tort claim based on an injury suffered in Mexico even where the supervisory decision-making associated with the injury occurred at headquarters in the United States). Plaintiff's alleged injuries were suffered while she was working at the Vancouver Airport in British Columbia, Canada. Therefore, her FTCA claims are barred under the foreign country exception to the FTCA.[7]

Plaintiff contends that because Defendants filed the instant motion to dismiss eighteen months

---

[7] Seeking to avoid the foreign country exception to the FTCA, Plaintiff asserts in her Response that her FTCA claim for intentional infliction of emotional distress is also based on an incident in which Edwin Martinez, an agency supervisor in Seattle, posted "outrageously false and demeaning statements" about her on an Internet website. (Resp. 5 (Dkt. No. 92).) It appears from Plaintiff's Complaint that she would have suffered this alleged wrong sometime after February 2003, while she was back in Arizona, not in Canada. (2d Am. Compl. ¶¶ 42–43 (Dkt. No. 75-7 at 9).) While the foreign country exception to the FTCA would thus not appear to bar this claim, another exception to the FTCA would apply: the intentional torts exception, which covers claims "arising out of" libel, slander, and a number of other torts. 28 U.S.C. § 2680(h). Even assuming these allegations are true, Plaintiff's claim for emotional distress damages "arise out of" her supervisor's posting of false statements about her on an Internet website. Therefore, the claim is barred by section 2680(h). *See Thomas-Lazear v. FBI*, 851 F.2d 1202, 1206 (9th Cir. 1988) (holding that where the "essence of the claim is the spreading of slanderous statements," a claim for emotional distress is properly barred by section 2680(h)). The Court notes that Judge Strand already dismissed Plaintiff's earlier-asserted misrepresentation and defamation claims against the Government under the FTCA on this same ground. (Order (Dkt. No. 75-6 at 8).)

ORDER – 12

after she filed her Second Amended Complaint, Defendants' motion to dismiss the FTCA claim is barred by the equitable doctrine of laches. (Resp. 2 (Dkt. No. 92).) The Court finds this argument without merit. "An objection that a federal court lacks subject matter jurisdiction may be raised at any time, even after trial and the entry of judgment." *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009). Further, "[i]f the court determines <u>at any time</u> that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added). Accordingly, the Court must dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted (Dkt. No. 86). The Clerk is instructed to CLOSE this case.

DATED this 28th day of April, 2009.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[8]The Government contends that even if Plaintiff's FTCA claims were not barred by section 2680, they would still be barred as preempted by the CSRA. (Mot. 15 (Dkt. No. 86).) The CSRA preempts a federal employee's FTCA claims if the conduct underlying the complaint can be challenged as "prohibited personnel practices" within the meaning of the CSRA. *Mangano v. United States*, 529 F.3d 1243, 1247 (9th Cir. 2008) (holding that a former federal employee's FTCA claims for intentional infliction of emotional distress resulting from various actions allegedly taken in retaliation for whistleblowing activities were preempted by the CSRA). The Court need not, however, reach this argument because, as discussed above, even if the CSRA did not preempt Plaintiff's FTCA claims, express exceptions to the FTCA do bar her FTCA claims.

ORDER – 13